**Sarah LIEBERMAN, Plaintiff-Appellant,**

v.

**Joseph CALIFANO, Secretary of the Department of Health, Education and Welfare, Defendant-Appellee.**

No. 78–1964.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1978.

Decided Feb. 20, 1979.

Samuel W. Miller, Chicago, Ill., for plaintiff-appellant.

Steven J. Plotkin, Dept. of HEW, Chicago, Ill., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

CASTLE, Senior Circuit Judge.

Claimant Sarah Lieberman, now 69 years old, has been suffering for many years from a nervous condition which has made it impossible for her to work. She seeks disabled child's benefits under a provision of the Social Security Act, 42 U.S.C. § 402(d)(1), which entitles the child of a wage earner who died fully insured to draw benefits based on the earnings record of that parent, beginning from the time that the application for benefits is filed, if the child (1) was dependent on that parent at the time of the parent's death, (2) was unmarried at the time of applying for the benefits, and (3) "is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22." In claimant's case the disability must be "physical or mental impairment * * * of such severity that [she] * * * cannot * * * engage in any * * * kind of substantial work which exists in the national economy * * *." 42 U.S.C. § 423(d)(2)(A).

The only question raised by this appeal is whether Ms. Lieberman has satisfied the third requirement of eligibility. After independent hearings, two administrative law judges reached the conclusion, affirmed by the district court, that Ms. Lieberman had failed to sustain her burden of proving the existence of an impairment of disabling severity prior to age 22 (or age 18, which was the critical age at the time of the first administrative law judge's opinion).

## THE PROPER STANDARD

Claimant first argues that the administrative law judges applied the wrong legal standard, as under *Lohtak v. Richardson*, UNEMPL. INS. REP. (CCH) ¶ 16,309 (D.Colo.1971), claimant need only prove that her present disability stems from an impairment which began prior to age 22, not that the impairment had reached disabling severity prior to that age. While the statutory language quoted above may be amenable to such an interpretation, we are in accord with the district court's rejection of the *Lohtak* interpretation since the legislative history[1] as well as every other opinion in this and other circuits[2] requires a showing that the impairment had reached disabling severity prior to age 22.

---

1. "Your committee's bill would provide for the payment of benefits after age 18 to the dependent child of a retired or deceased worker if the child has been permanently and totally disabled since before age 18." 1956 U.S.Code Cong. & Admin.News, p. 3881.

2. *See, e. g., Reading v. Mathews*, 542 F.2d 993, 996–97 (7th Cir. 1976); *Reyes v. Secretary of Health, Education and Welfare*, 155 U.S.App. D.C. 154, 476 F.2d 910 (1973); *Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973).

SUFFICIENCY OF THE EVIDENCE

■ Having concluded that the administrative law judges applied the correct legal standard, the only remaining question is whether the Secretary's findings of fact, as well as the inferences drawn therefrom, were supported by substantial evidence. 42 U.S.C. § 405(g); *Reading v. Mathews*, 542 F.2d 993, 997–98 (7th Cir. 1976). If so, we are not free to overturn the Secretary's decision even though we might have reached an opposite conclusion in a *de novo* consideration. *Reading v. Mathews, supra; Moon v. Celebrezze*, 340 F.2d 926, 930 (7th Cir. 1965).

*Ms. Lieberman's Life History*

Sarah Lieberman was born in 1909 in what was then a part of Poland. As a child she attended religious school, where she learned Yiddish. She and her brother testified that she was always sickly as a child, was extremely nervous, and suffered from a facial tic which caused her to squint and blink her eyes. She had difficulty socializing with other children and was told by her mother that she suffered a nervous breakdown at age 14 or 15. She visited several doctors in Poland who gave her medicine which never seemed to help much. At the age of 20 she emigrated with her family to this country, where she attended elementary school with much younger children to learn English. She testified that she would have attended night school with students closer to her own age, as her two brothers had, if she had been able to get a job, but that she was unable to get even a babysitting position. She graduated in the normal number of years, when she was 25 and her classmates were 13.

After arriving in this country she had continued to visit doctors and received electroshock treatment at some time after age 22, though there are no records of this or any other treatment dating from this period. She lived at home with her parents, doing light housework, although she testified that they took care of her rather than vice-versa. The only job she ever had was as a part-time sales clerk at Hillman's bakery for one and a half years during World War II. She and her brother testified that she had trouble getting started in the morning, would not arrive at work until the afternoon, and would only work about three days a week. She complained of feeling faint in the streetcar on the way to work, but she never actually fainted. She stated that customers would remark on her nervousness and tics and recommend that she see a doctor. Her father died in 1957, and since her mother's death in 1965 she has been living alone, doing light housework and cooking for herself, and going shopping with the assistance of her brother or sister-in-law.

*Claimant's Medical Complaints*

Claimant testified to a lifelong problem with extreme nervousness and a facial tic and had present complaints of "shakes and twitches" and trouble with her spine. She also mentioned a thyroid condition which had peaked at age 14 or 15 but been brought under control by medication she was still taking. As to whether her condition had improved over the years, her brother testified that it was "about the same, but at times, when she was younger, she was worse."

*The Medical Evidence Before the First Administrative Law Judge*

The medical evidence before the first administrative law judge, which was incorporated by reference into the second administrative law judge's opinion, consisted of a physician's current report of a 1947 examination of claimant, a review of that report by a psychiatric consultant for the Social Security Administration, and hospital files from the years 1960 and 1961.

The examining physician reported in 1970 that Ms. Lieberman had come to him in 1947 with many psychosomatic complaints and that he had treated her with a tonic. He also reported a thyroid condition and a spine problem, but his knowledge of these appears to date from a later time, possibly from information currently supplied by Ms. Lieberman. In any event, he did not state

that she had complained of these conditions in 1947 and he did not treat her for these conditions. His statement that Ms. Lieberman is a depressive type of character and unable to work is an expression of her current disability rather than of one predating age 18 or 22. Finally, he reported that he had known both claimant's parents and that she was a devoted daughter who had looked after them.[3]

After reviewing the above medical report and a caseworker's report outlining the facts of claimant's life already related, a psychiatric consultant for the Social Security Administration concluded that the medical evidence was insufficient to establish the existence of a disability prior to age 18, particularly in light of the absence of any evidence of significant mental retardation or significant psychiatric impairment.

Hospital files indicated complaints in 1960 of "pain in spine, shoulders, face, brains, and everything" for 15 years. The hospital concluded there was no significant physical abnormality and diagnosed "postmenopausal syndrome with manifestations of tic-like symptoms." A 1961 psychiatric report from the hospital stated that her tic had begun in this country, that it had become progressively worse, and that her problem was a psychological one, diagnosed as chronic neurosis and inadequate, passive personality.

Based on this record, the administrative law judge found that Ms. Lieberman's chief impairment was psychological and that she presently suffered from an inadequate personality with psychoneurotic depressive features, but that there was no evidence of significant mental retardation and no evidence of a disabling psychological problem prior to age 18, other than claimant's own testimony with respect to the latter, which was insufficient to meet her burden of proving disability under the Act. We conclude that these findings were supported by substantial evidence and that the administrative law judge's legal conclusion based on these findings was correct.

To establish disability, the claimant is required by 42 U.S.C. § 423(d)(1)(A) to prove that she (1) suffers from a medically determinable physical or mental impairment which (2) prevents her from engaging in any substantial gainful activity. *Stark v. Weinberger*, 497 F.2d 1092, 1096 (7th Cir. 1974) (Stevens, J.). To qualify for child disability payments, claimant is required also to prove that she satisfied both these criteria of eligibility prior to the critical age, which was 18 at the time of the first administrative hearing.

The 1967 amendments require that a "physical or mental impairment" be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The legislative history specifically states that:

> Statements of the applicant or conclusions by others with respect to the nature or extent of impairment or disability do not establish the existence of disability . . . unless they are supported by clinical or laboratory findings or other medically acceptable evidence confirming such statements or conclusions.

1967 U.S.Code Cong. & Admin.News, pp. 2882–83. The Secretary's regulations are to the same effect. 20 C.F.R. §§ 404.1501(c) & 404.1523 (1978). As the oldest medical evidence dated from an isolated medical examination fully 20 years after the critical age, and as that evidence was equivocal as to the existence of a "medically determinable physical or mental impairment" even at the time of the examination, let alone 20 years earlier, we conclude that the first administrative law judge correctly denied benefits.

*The Medical Evidence Before the Second Administrative Law Judge*

At the second administrative hearing, claimant introduced new medical and lay evidence consisting of (1) reports by a psychiatrist and a neurologist extrapolating current diagnoses back over more than 40

---

**3.** This suggests that she stayed home out of preference, to care for her parents, while Ms. Lieberman testified that she stayed home be-cause she was unable to find work, and that her parents took care of her.

years to estimate claimant's condition prior to age 22, and (2) the affidavit and testimony of claimant's brother as to her condition prior to age 22.

The psychiatrist diagnosed Ms. Lieberman as "a chronically depressed woman whose personality structure is passive dependent with hysterical features." He believed her to be presently disabled and "strongly indicate[d]" that she had been disabled "since early life." The neurologist diagnosed "Involuntary movement disorder—chorea & tics (could be Gilles de la Tourette syndrome)." In further remarks, he added that it "could be basal ganglion disease or Gilles de la Tourette Syndrome or senile chorea." As to date of onset, he estimated "40+ years ago."

Claimant's brother stated in an affidavit that his sister was stricken with a "nervous condition" manifested by facial tics and extreme nervousness when she was about 10 and that this condition, coupled with poor health, had rendered her incapable of work of any kind.

The issue upon which the present claim hinges is whether this new evidence is sufficient to cure the evidentiary gap which resulted in the denial of benefits at the first administrative hearing. The only medical evidence bearing both on the existence of a disability and on the existence of such dis-

ability prior to age 22 is the psychiatrist's report. The neurologist expressed no view on the severity of the impairment and his estimate as to the date of onset would not necessarily carry claimant's condition back to age 22.[4] Furthermore, the neurologist could not even diagnose with certainty what disease claimant suffered from, and the tentative diagnoses were problematic. One diagnosis, for example, was of a progressive disease which would have been less serious at childhood.[5]

Because the neurologist's report cannot be used to establish any kind of disability and the medical evidence before the first administrative law judge indicated no significant physical impairment,[6] we conclude that Ms. Lieberman's claim must rest on proof of a psychological disability beginning prior to age 22 and continuing up to the present. See Reading v. Mathews, 542 F.2d 993, 997 (7th Cir. 1976).

*Weight to be Accorded the Psychiatrist's Opinion*

■ The second administrative law judge concluded that the later medical evidence extrapolating claimant's present disability back to early life was entitled to "significant weight," but that it could not "serve to establish the existence of a disabling physical or mental impairment *more than 40*

4. Ms. Lieberman had reached age 22 forty-three years prior to the report and the doctor estimated that her condition had begun "40+ years ago."

5. The Cecil-Loeb Textbook of Medicine identifies three types of choreas (an involuntary movement disorder): acute chorea, hereditary chorea, and senile chorea. Acute chorea is encountered primarily during childhood and "is a self-limited disease, recovery occurring in two to six months. Recurrence, with as many as two or three attacks over a period of years, appears in almost one third of the cases." Cecil and Loeb, Textbook of Medicine 184 (13th ed. 1971). So if Ms. Lieberman had been suffering from this type of chorea, she would not meet the requirement of continuity of disability from age 22 to the present. See Reading v. Mathews, 542 F.2d 993, 997 (7th Cir. 1976). Hereditary chorea is not a likely possibility as there is no indication that her parents were affected by chorea; and the final type of chorea—senile chorea—would obviously not have

affected claimant at childhood. Furthermore, acute chorea "may be very mild and may minimally affect normal function or may be so forceful and frequent as to be totally disabling." Textbook of Medicine, supra at 184. The neurologist gave no indication as to how severe Ms. Lieberman's condition was. Nor does the record show that Ms. Lieberman dropped objects, which would have been a manifestation of severe chorea. Id.

Tics are not normally disabling, and "Gilles de la Tourette Syndrome" is a form of tic "involving facial twitching, continuous gestures associated with echolalia, foul language, and obsessional ideas [which] is occasionally encountered in childhood. The disorder is progressive, and sometimes associated with marked personality changes." Id. at 185.

6. The hospital records before the first administrative law judge concluded that Ms. Lieberman had "no significant physical abnormality" in 1960.

*years ago* in the absence of any medical evidence relating directly to that time." (Emphasis added). We think it clear, therefore, that the administrative law judge *did* consider the later medical evidence and in fact gave it "significant weight" but nevertheless concluded that the particular medical evidence involved in this case did not establish the existence of a disability more than 40 years ago as required by the statute.[7] In considering the later medical evidence but not according it conclusive weight in the circumstances of this case, the administrative law judge acted consistently with our opinion in *Stark v. Weinberger, supra.*

In *Stark* we accepted the opinion of a later treating physician as determinative on the question of the existence of a disability at a point in time several years prior to his first contact with the claimant, even though there were no medical records dating from that period. Several distinguishing circumstances in the present case, however, support the administrative law judge in not according conclusive weight to the later medical evidence. First, Ms. Stark suffered from a precisely diagnosable impairment (scleroderma) with well known developmental stages,[8] so that the doctor was able to accurately estimate the seriousness of claimant's condition at a given time in the past. Here, by contrast, claimant suffers from a psychological problem variously diagnosed as depression and/or hysteria. The development stages of these conditions are not nearly so well known as those of scleroderma, the state of present medical knowledge in the area of psychiatric disorders being far behind knowledge of physical disorders.[9] It is therefore a much more uncertain exercise to trace back through claimant's development over the past 40 years in an effort to ascertain the severity of her condition prior to age 22. This is particularly so as there have been certain intervening factors, such as the death of claimant's parents and her subsequent living alone, which would have induced or aggravated a state of depression, so that it is impossible to determine the seriousness, or even the existence, of depression at a prior point in time.[10] Also, her ability to live alone with-

7. This interpretation is buttressed by the administrative law judge's earlier statement that he found it impossible to conclude that a disability had been established "in light of the absence of any direct medical findings *until many years after that date.*" (Emphasis added). Thus it was not merely the absence of direct medical evidence that resulted in the administrative law judge's denial of benefits but the absence of such evidence "until many years after [age 22]." We also find that the administrative law judge's repeated reference to the particular medical evidence involved in this case indicates that the *nature* of the medical evidence was an important consideration in his denial of benefits.

8. Scleroderma has been defined as a

chronic mesenchymal disease of undetermined origin, characterized by connective tissue proliferation in the dermis and in many internal organs. The onset is insidious, with stiffness of the hands, sweating of the hands and feet, and Raynaud's phenomenon. The skin eventually becomes hard, thick and glossy, and the fingers and toes become fixed. Gradually the entire integument becomes involved, and ulcerations, pigmentation, and calcification may occur. Dysphagia, disturbed gastrointestinal motility, respiratory embarrassment, pneumonia and heart failure and renal involvement are due to connective tissue proliferation of the viscera. The condition is usually slowly progressive over many years, and death is usually due to renal or cardiac failure or to sepsis. Treatment is symptomatic and supportive.

The Handbook of Medical Treatment 386 (12th ed. 1970), quoted in *Stark v. Weinberger, supra* at 1094.

9. [Many skilled physicians] are apt to contrast their knowledge of somatic illness founded firmly in morbid anatomy and pathophysiology with their understanding of psychologic medicine in which classifications seem based on confusing mixtures of symptomatology and speculative theories. . . .

The concept of any given disease passes through several stages as knowledge increases. . . .

For most psychiatric disorders knowledge has not passed the first stage on the traditional path. For many even the hold on this stage is insecure.

Textbook of Medicine, *supra* at 107.

10. The psychiatrist's report indicated that Ms. Lieberman had been very depressed *since the death of her parents.*

out becoming suicidal negated a finding of serious depression, in the opinion of the psychiatric consultant for the Social Security Administration. The other condition diagnosed—hysteria—is one whose developmental course cannot, by the very nature of the condition, be traced with anything approaching certainty since it comprises a host of psychosomatic complaints.

Second, in the *Stark* case a finding of statutory "disability" was facilitated by the fact that we did not think it necessary to find an actual inability to work at the earlier period, as any work involving use of the hands would have only aggravated Ms. Stark's condition, and that was the only kind of work she had ever done. *See Stark v. Weinberger, supra* at 1098–99. Here, by contrast, claimant would still have to prove that she was in fact unable to work prior to age 22 in order to support her claim of disability at that time. *See* 42 U.S.C. §§ 423(d)(1)(A) and (d)(2)(A).

Finally, in *Stark* the physician giving the opinion had treated the claimant and followed her condition for many years, whereas the psychiatrist here based his opinion on a single examination of Ms. Lieberman conducted more than 40 years after the relevant period. "[T]he opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claimant only once." *Selig v. Richardson,* 379 F.Supp. 594, 601 (E.D.N.Y.1974), relied on in *Allen v. Weinberger,* 552 F.2d 781, 786 (7th Cir. 1977).

*The Lay Testimony*

We do not think the lay opinion of claimant's brother can overcome the defects in the medical evidence pointed out above, especially since he was an interested party. Nor do we think that the additional affidavits of two acquaintances filed after the second administrative hearing but before the Appeals Council's final decision change this result.

Accordingly, the judgment of the district court affirming the agency's denial of benefits is AFFIRMED.

PELL, Circuit Judge, dissenting.

Fortunately, the penchant of recent years for maintaining records, aided and abetted even more recently by computer processes, means for most persons seeking to assert a claim of the type involved here that they will not suffer what appears to me to be the denial of a legitimate claim as has been visited upon Sarah Lieberman. Unfortunately for her, she spent the first twenty years of the crucial first twenty-two in Poland. There is no dispute that the medical treatment she received in Poland for the mental condition, which condition in the words of a third person who knew her in Poland as well as here "has not changed significantly since," is not supported by existing records made at the time. It is also unfortunate for this 69 year old woman, disabled from accepting gainful employment that, because of the nature of this litigation, the opinion of this three judge panel will bring her to the end of the road insofar as establishing a claim is concerned. I respectfully dissent.

It takes no close reading of the opinions of the two administrative law judges to discern that the motivating force for their decisions was that there was no "medical evidence" in the record from the pertinent period of her life. Putting to the side the first opinion and looking at the one here under review in the record of which there was evidence from a neurologist and a psychiatrist, the ALJ opinion nevertheless, although for the most part reading like a brief for the claimant, finally squarely rests on "the absence of any *medical evidence* relating *directly* to that time." (Emphasis added.) Yet the two medical doctors did provide "medical evidence" as to "that time," one opining that her "condition began more than 40 years previously," and the other that he "would strongly indicate that it [the disability] existed since early life," and ". . . indeed Miss Lieberman was not able to work early in life or at the present time because of her emotional disability."

The law of this circuit as to the necessity of medical evidence actually generated during the period prior to the pertinent date, which the ALJ's opinions seem to require,

was made clear in *Stark v. Weinberger*, 497 F.2d 1092 (7th Cir. 1974), in which I dissented, but in which the majority speaking through then Judge Stevens clearly established that records of diagnosis did not have to have been made prior to the pertinent qualification date. In *Stark*, the claimant's own records had been destroyed by a flood, two of her doctors had long since been deceased and the third could not be located. Yet according to *Stark*, a medical opinion does not become unacceptable simply because it is based upon a claimant's symptomology, or lay testimony and it "is also clear that a diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment." *Id.* at 1097.

That was what occurred here and although the record before the ALJ did not really contradict that "medical evidence," the ALJ while finding it had "significant weight," apparently could not surmount his misconception of the law that it must but did not relate "*directly* to that time." I fail to see how it could have related much more directly.

The majority opinion attempts to distinguish *Stark* on the basis that in that case a physical ailment was involved as opposed to mental disability in the present.case. Note 9 of the majority opinion seems to suggest that for most psychiatric disorders knowledge has really not developed to any secure basis. It may be true that "many skilled physicians," accustomed to somatic illness cannot carry over that knowledge to an understanding of psychologic medicine but the "medical evidence" here was not from a skilled general physician, it was from a person skilled in the knowledge of mental disabilities. I am assuming that the majority opinion does not relegate either the treatment or the diagnosis of mental disorders to some sort of witchcraft, yet Note 9 leaves one in doubt.

There is, as a matter of fact, one very real distinction between *Stark* and the present case. In *Stark* the evidence reflected that the claimant had earned more than $10,000 from one employer subsequent to the pertinent date for disability. In the present case, the only employment during her lifetime occurred for only a very short time and on a part-time basis during the barrel-scraping days of World War II. Yet the *Stark* court had no difficulty in finding that the disability existed prior to the occurrence of the substantial earning from employment.

The majority opinion states the law correctly to the effect that we are not free to overturn the decision below even though we might have reached an opposite conclusion on a *de novo* consideration. Yet in subsequent portions of the opinion by its resort to medical textbooks there does appear to be a *de novo* examination of the evidence to demonstrate that Sarah Lieberman was not really disabled prior to 1931. What we have before us for review, however, is a decision that she was not entitled to establish her claim because of "the absence of any medical evidence relating *directly*" to the period prior to 1931. The ALJ conceded that there was "no question that the claimant is presently disabled" but obviously felt the medical evidence, although of "significant weight," failed in sufficiency because it was a diagnosis made some years "after actual onset of the impairment." *Stark, supra.* The decision below, resting upon an incorrect legal basis, should be reversed.