**Edward J. KIRBY, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

No. 83 C 6130.

United States District Court, N.D. of Illinois, E.D.

June 27, 1984.

Donald R. Crowe, Patrick Mahoney & Associates, P.C., Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty. by Mary Anne Mason, Asst. U.S. Atty., Donna Morros Weinstein, Regional Atty., Dept. of Health & Human Services, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

The instant matter arises under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), as an appeal from the final determination of the Secretary of the Department of Health and Human Services (the Secretary) denying the claimant disability insurance benefits. Before the Court are the parties' cross-motions for summary judgment. For the reasons stated herein, the motions for summary judgment are denied and the case is remanded to the Secretary for further proceedings consistent with this order.

## BACKGROUND

On June 25, 1982, the plaintiff filed an application for disability insurance benefits and supplemental security income alleging disability since May 30, 1982 by reason of problems stemming from a below the knee amputation of his left leg. The application was denied initially and on reconsideration. On May 20, 1983, a hearing was conducted by an Administrative Law Judge (ALJ). The ALJ held that while plaintiff Kirby could no longer perform in his former capacity of truck driver, Kirby could perform certain sedentary jobs and therefore was not disabled. The Appeals Council of the Social Security Administration affirmed this decision on August 20, 1983. This determination became the final decision of the Secretary. Plaintiff then filed suit pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Secretary's decision.

Plaintiff contends that the Secretary's finding that he did not suffer from a severe impairment which rendered him disabled is not supported by substantial evidence. Specifically, plaintiff challenges the ALJ's finding in light of evidence presented by both the plaintiff's physician and the Secretary's own vocational expert regarding the difficulties plaintiff and others like him have had in adjusting to prostheses.

## THE LAW

 A plaintiff must complete a two-step process in order to establish a disability sufficient to entitle him to benefits. The first step requires that a medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months must be found to exist. Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. 42 U.S.C. § 423(d)(1)(A), (2)(A); *McNeil v. Califano*, 614 F.2d 142 (7th Cir. 1980); *Lieberman v. Califano*, 592 F.2d 986 (7th Cir.1979). The plaintiff must bear the initial burden of proof to establish entitlement to disability insurance benefits under the Social Security Act. *Johnson v. Weinberger*, 525 F.2d 403 (7th Cir.1975). The plaintiff may establish his claim to benefits by showing that he is unable to perform his former job due to his disability; at that point the burden shifts to the Secretary to produce evidence that will justify a finding that there is some alternative employment which exists in substantial numbers in the national economy that the claimant would be able to perform. *Stark v. Weinberger*, 497 F.2d 1092 (7th Cir.1974). The decision of the Secretary must be supported by substantial evidence, 42 U.S.C. § 405(g), which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

## DISCUSSION

The ALJ, after considering the evidence presented, concluded that plaintiff did not suffer from a severe impairment which rendered him disabled and thus entitled to disability insurance benefits. In so concluding, the ALJ found that

. . . . .

3. Claimant's allegations of severe stump pain and inability to adjust to a prosthesis are not supported by the medical evidence of record or his own testimony and are therefore, not credible.

4. The claimant has the residual functional capacity to perform work-related functions except for work involving prolonged standing, walking, or climbing; any bending, stooping, or operating foot controls with the left side; frequently lifting and carrying more than ten pounds.

5. The claimant is unable to perform his past relevant work as a truck driver.

6. The claimant has the residual functional capacity for at least sedentary work as defined in Regulation 404.-1567. . . .

Since the ALJ found that Kirby was unable to return to his former job, the initial hurdle has been satisfied. The burden thus falls on the Secretary to show that Kirby, given his overall condition, nevertheless retained sufficient capacity to perform specific jobs existing in the national economy. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). Because the Court feels that the ALJ erred in the assessment and analysis of Kirby's impairment in connection with his residual functional capacity, it cannot be said that the Secretary has met this burden.

It appears that the ALJ failed to give proper consideration to evidence submitted by Morris Lang, M.D., plaintiff's treating physician, in reaching his conclusion that Mr. Kirby has retained the functional capacity to perform sedentary work activities.[1] As the ALJ noted, Dr. Lang opined that Kirby, at the time of examination on April 15, 1983, was unable to do any type of work but at a later date would be able to do a sitting job with minimal walking and standing.[2] The opinion of plaintiff's treating physician is entitled to great weight. *Allen v. Weinberger*, 552 F.2d 781 (7th Cir.1977). A growing number of decisions

---

1. The U.S. Department of Labor has set out the following definition of "sedentary" work:

 Sedentary work implies a capacity to sit for at least six hours in an eight-hour work day and to lift up to ten pounds maximum. The ability to walk and stand up to approximately one third of the work day (2–3 hours per day per eight-hour day) is also implied in sedentary work.

 Dictionary of Occupational Titles, 1965, Vol. II, Occupational Classification, Third Edition, U.S. Department of Labor.

2. The hearing was May 20, 1983, thirty-six days after the examination.

emphasize that the ALJ, in denying disability, must express why evidence favorable to the claimant was not credited or was deemed not controlling. *See e.g., Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982); *Holndoner v. Schweiker,* 542 F.Supp. 739 (N.D.Ill.1982); *Garcia v. Califano,* 463 F.Supp. 1098, 1105 (N.D.Ill.1979). The ALJ's failure to specifically state why he apparently rejected the conclusions of the treating physician in itself warrants remand.

It also appears that the ALJ also failed to accord serious consideration to the subjective testimony of the plaintiff. Such evidence must be given serious attention in the process of evaluating the total evidence. *Atkins v. Califano,* 446 F.Supp. 1017 (N.D.Ill.1978). There is simply no evidence to contradict Kirby's testimony as to severe stump pain and inability to adjust to the prosthesis. The ALJ apparently relied upon his observations of plaintiff in determining that plaintiff's complaints of pain and discomfort are "less than credible." While the ALJ's observations of plaintiff are certainly relevant, the ALJ's lay observation that Kirby did not appear to be disabled, standing alone, cannot constitute substantial evidence supporting an ultimate conclusion of nondisability. *Lewis v. Califano,* 616 F.2d 73, 76–77 (3d Cir.1980).

Finally, the Court believes that the testimony of Hubert Weiner, Ed.D., who appeared at the request of the Secretary, was most favorable to the plaintiff's position.[3] Once again, the failure to give reasons why this testimony was not credited or was deemed not controlling constitutes error on the part of the ALJ. *See, Whitney, supra.* The ALJ's apparent insensitivity to plaintiff's complaints of pain and plaintiff's testimony regarding the difficulties he was encountering in adjusting to the prosthesis are most troubling. Proper adjustment to a prosthesis is an important part of the healing process. It is true that plaintiff was able to ambulate with crutches shortly after the operation. It is also true that sedentary positions are available to persons who use crutches. However, it does not necessarily follow that Mr. Kirby is able to perform such positions.

While the ALJ's observations of plaintiff are certainly relevant and reliable, in light of the overwhelming evidence to the contrary contained in the record, to simply declare that plaintiff's complaints of pain were "less than credible," without further explanation, constitutes error on the part of the ALJ. The Court therefore remands the instant matter to the Secretary to make specific findings as to the plaintiff's pain which are supported by substantial evidence. In so doing, the Secretary should state explicit reasons for rejecting the diagnoses supplied by plaintiff's physician, the subjective testimony of plaintiff Kirby, and the testimony of the Secretary's vocational expert. *See, Holndoner, supra.*

---

3. Examination [of Mr. Weiner] by attorney:

Q So you said, you just indicated you've placed people with artificial limbs. At what stage after they received their artificial limbs did you place them?

A That would occur after a sufficient length of time for them to adapt to the prosthesis which, in some instances, might be several months in order for the proper fit to finally get established and for the proper hardening of the stump to occur and for the individual to develop the agility and the skill to use the prosthesis in as natural a fashion as possible.

Q Can I take it from your statement that you would not expect a person with a prosthesis to perform one of these production jobs or machine operation jobs prior to his adapting fully to the prosthesis?

A It would be a rare individual who could go immediately from the prosthetic fitting to an employment situation, particularly where there are elements of pain involved or discomfort so that the individual's ability to attend to a given task is limited because of the distraction caused by pain.

Q I'd like you to apply those standards to Mr. Kirby. You've heard his testimony today that he just received his prosthesis within the last six to eight [weeks]. He's incurring certain difficulty adjusting to it.... Applied to Mr. Kirby's situation, would you expect him to do any production jobs or machine jobs today?

A ... I would feel that there is reasonable likelihood that this would not be an adequate amount of time to make the sufficient adjustment for employability.

Transcript, Administrative Record at 74–77.

## CONCLUSION

For the reasons stated herein, the parties' Motions for Summary Judgment are denied. The case is ordered remanded to the Secretary for further proceedings consistent with this order.

IT IS SO ORDERED.