908 F.2d 975
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Rae Ellen RODERER, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 89-1945.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 23, 1990.
Decided July 25, 1990.
 
 Before POSNER, COFFEY, MANION, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Rae Ellen Roderer appeals the order of the district court granting summary judgment for the defendant, the Secretary of the United States Department of Health and Human Services ("Secretary"), on the issue of whether the Secretary improperly denied Roderer's application for Child's Insurance Benefits under the Social Security Act. See 42 U.S.C. Sec. 402(d). We affirm.
 
 I.
 
 2
 Roderer filed her initial application for Child's Insurance Benefits on March 3, 1982, when she was 48 years of age. Roderer claimed that she had become disabled prior to reaching the age of 22, and that she was entitled to benefits because she was dependent upon her father, who was "fully insured" for social security purposes, until his death in 1978.[1] On August 19, 1986, an administrative law judge ("ALJ") within the Social Security Administration conducted a hearing on Roderer's application. The evidence presented during the hearing consisted of past and present medical and psychological reports, testimony of medical and psychological experts, testimony of persons who had known Roderer personally during both her childhood and adult years, as well as the testimony of Roderer herself.
 
 
 3
 The ALJ found that at or before her 22nd birthday (June 27, 1956), Roderer suffered from three impairments: borderline intellectual capacity, epilepsy and a dependent personality disorder. Her intellectual capacity was evidenced by an IQ of 79.[2] Roderer was diagnosed by the Mayo Clinic in 1946, at the age of 12, as suffering from epilepsy. Her condition was controlled with Dilantin by the time she reached the age of 13 or 14. Her dependent personality disorder problem was not diagnosed until 1982. Thus, the ALJ and the medical and psychological experts were required to extrapolate as to Roderer's condition as it existed on or before her 22nd birthday based on medical records and examinations, as well as lay testimony regarding her activities and educational pursuits during the relevant time period.
 
 
 4
 Roderer's case history reflects that she completed high school in four years and continued her educational pursuits for three more years of secondary education at St. Francis College in Fort Wayne, Indiana. Her academic records indicate that she failed only one high school course (algebra), and one college course (logic). She did her best work in social science and language-oriented courses, but she had difficulty with math-related course work. Roderer testified that she halted her college studies because "it was getting a little too tough for me." After her 22nd birthday, Roderer did volunteer work at a school for the mentally retarded and for the American Lung Association. However, Roderer ceased these activities in 1978, and, in 1981, became a ward of Catholic Social Services and the Fort Wayne National Bank. Since that time, these organizations have been responsible for maintaining Roderer's care, as well as her household, and the guardianship of her estate.
 
 
 5
 Dr. Thomas W. Vodde, who examined Roderer in 1982 and who testified on her behalf in the present action, performed an IQ test which established a full scale IQ of 79. Dr. Vodde also diagnosed a dependent personality disorder, which appeared to be severe and limiting at the time of the ALJ hearing (1986). Upon questioning from the ALJ, Dr. Vodde testified that the dependent personality disorder is a progressive disorder, and that it was possible that Roderer's condition had deteriorated over the years to its present severity. A followup report was prepared by Dr. Vodde, stating that Roderer was disabled to the extent that she would not be suited for competitive employment, but made no mention of her condition at or before age 22.
 
 
 6
 Dr. Robert L. Greenlee, a psychiatrist who examined Roderer in 1986, reviewed Dr. Vodde's report and the other medical evidence. He state that Roderer was handicapped due to borderline intellectual functioning and dependent personality disorder, but that she was not mentally retarded and that a mentally retarded person could not have achieved the grades Roderer achieved in school. Dr. Greenlee testified that the dependent personality disorder was probably present in Roderer prior to age 22, but he stated that this was only "a guess" and he could not establish with any certainty the precise diagnosis at that age.
 
 
 7
 The record also contained brief written reports from several doctors regarding Roderer's condition. Three different medical doctors and a clinical psychologist examined Roderer's medical records for the Secretary and found that there were inadequate medical findings to establish that Roderer was disabled on or before her 22nd birthday. Dr. Galen Huffman diagnosed moderate mental retardation and a borderline personality disorder in 1981 after examining her in preparation for a guardianship hearing.
 
 
 8
 The ALJ issued a decision concluding that Roderer was not entitled to Child's Insurance Benefits.[3] The Appeals Council for the Social Security Administration declined to review the ALJ's decision, and it became the final decision of the Secretary. Roderer filed a complaint in the district court seeking judicial review of the ALJ's decision. On consideration of the parties' cross-motions for summary judgment, the district court granted summary judgment in favor of the Secretary on March 7, 1989. On appeal, Roderer argues that the district court's grant of summary judgment for the Secretary was improper because substantial evidence does not support the Secretary's finding that Roderer was not disabled on or before her 22nd birthday.
 
 II.
 
 9
 The standard of review on a district court's order granting summary judgment is de novo. However, this court does owe deference to the Secretary as the factfinder in this case. See Adventist Living Centers v. Bowen, 881 F.2d 1417, 1420 (7th Cir.1989). The ALJ's conclusion that Roderer was not disabled at the age of 22 must be upheld if it is supported by substantial evidence. Stuckey v. Sullivan, 881 F.2d 506, 508 (7th Cir.1989); Farrell v. Sullivan, 878 F.2d 985, 988 (7th Cir.1989). This court will not reweigh the evidence presented to the ALJ, and we will not determine whether Roderer was actually disabled. Stuckey, 881 F.2d at 508; Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987). As noted above, the ALJ found that none of Roderer's impairments imposed such significant restrictions on her functional capacity that she could be classified as being disabled under the Social Security Act on or before her 22nd birthday. Thus, we will review the ALJ's findings regarding each of her impairments to determine whether they are supported by substantial evidence in the record.
 
 
 10
 Roderer's 1946 Mayo Clinic visit was premised upon an evaluation of Roderer's frequent "staring episodes," which were diagnosed as petit mal seizures associated with her epilepsy. Electroencephalographic tests ("EEG") showed the continual recurrence of these seizures. The Clinic's physicians prescribed Dilantin to control the epileptic seizures, and her family reported during the followup visit in 1958 that she had not suffered any seizures since the age of 13 or 14 years old. An EEG at that time showed no recurrence of the epileptic episodes, but instead, only "mild nonspecific abnormalities." We hold that there was substantial evidence to support the ALJ's finding that Roderer was not disabled due to her epilepsy by the time she reached age 22.
 
 
 11
 Roderer also claims that her intellectual capacity was disabling because she is mentally retarded. In his 1982 written report, Dr. Vodde stated that "the full scale IQ of 79 places her measured intelligence at the uppermost limit of the border-line range. Since current diagnostic practices do not include the border-line category in mental retardation, Miss Roderer's intellectual functioning is definitely not to be considered retarded." (Emphasis added). It was Dr. Vodde's opinion that Roderer is "quite capable of functioning in the language area. She could be expected to comprehend written and oral information and be expressive to an adequate degree." The ALJ noted that her academic performance was evidence of Roderer's intellectual capabilities. Furthermore, Dr. Greenlee acknowledged, upon inquiry from the ALJ, that someone who had mental retardation could not have achieved the academic success which Roderer did. The clinical tests of her intellectual functioning were consistent in demonstrating that she was not retarded. These tests, along with her academic success, constitute substantial evidence supporting the ALJ's finding that Roderer was not disabled by her intellectual capacity.
 
 
 12
 The personality disorder which Roderer suffers from is the most difficult of her impairments to evaluate. An extrapolation as to a psychological condition 25 to 30 years in the past is very imprecise, perhaps to the point of being a "guess," according to both Dr. Vodde and Dr. Greenlee. Both parties acknowledge that Roderer currently suffers from dependent personality disorder. However, the important consideration is whether she suffered from, and was disabled by, this disorder on June 27, 1956, her 22nd birthday.
 
 
 13
 The only mental evaluations of Roderer near the pertinent time period were in the Mayo Clinic records from her 1946 and 1958 visits. While psychologists at that time would not have used the term "dependent personality disorder" in their diagnosis,[4] the symptoms of that disorder would have been apparent to examining physicians, and would have been noted in the Mayo Clinic reports.[5] Dr. Vodde and Dr. Greenlee extrapolated in their oral testimony that there was a possibility that the disorder had developed to a disabling extent by Roderer's 22nd birthday, but both doctors admitted that their extrapolations regarding her psychological condition over 30 years earlier would not be precise diagnoses, and perhaps could have been no better than "calculated assumptions" (Dr. Vodde) or "a guess" (Dr. Greenlee). Although extrapolations may serve as a valid means to diagnose a previous psychological condition when no formal medical evidence is available, Stark v. Weinberger, 497 F.2d 1092 (7th Cir.1974), this court has recognized that such extrapolative evidence need not be given conclusive weight based on the particular circumstances of the case. Lieberman v. Califano, 592 F.2d 986, 991 (7th Cir.1979). In Lieberman, we noted that the uncertainty of extrapolating medical and competency information over a long period of time back to the age of 22 can be exacerbated by the presence of intervening factors. In the present case these intervening factors would include the death of Roderer's parents and her mother's illness prior to her death, as well as Roderer's breast cancer and the deterioration of her eyesight.[6] See id. at 991. Thus, in light of the uncertainty surrounding Roderer's personality disorder prior to her 22nd birthday, we hold that the ALJ's finding that Roderer was not disabled due to a dependent personality disorder at or before the age of 22 is supported by substantial evidence in the record.
 
 
 14
 A disability can be found by the Secretary based upon a combination of impairments. See 20 C.F.R. Sec. 404.1520(c) ("Any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities"); Stuckey v. Sullivan, 881 F.2d 506, 508 (7th Cir.1989); Steward v. Bowen, 858 F.2d 1295, 1298 (7th Cir.1988). However, the ALJ found specifically that Roderer did not have "any impairment or combination of impairments which imposed significant restrictions to her functional capacity" as of her 22nd birthday. In light of the fact that he found her epilepsy to be under control, no mental retardation, and no evidence to support the disabling effect of Roderer's personality disorder at age 22, there was substantial evidence to support his conclusion that the combination of these impairments did not render Roderer disabled as of her 22nd birthday.[7]
 
 III.
 
 15
 Rae Ellen Roderer has led a difficult life. In order to qualify for child's disability benefits, she must be able to prove that her impairments rendered her disabled at or before the time of her 22nd birthday, June 27, 1956. Prior to reaching the age of 22, she was successful in school, had well developed language skills, and was not noted as having any disabling personality disorders. Her epileptic condition was under control, and she was able to function well in society. Although her condition has worsened over the years, the Social Security Act does not allow the award of child's disability benefits based upon her condition as it progressed after the age of 22. We agree with the district court that the ALJ's decision finding that Roderer was not disabled at the age of 22 is supported by substantial evidence in the record. Accordingly, the district court's grant of summary judgment in favor of the Secretary is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The section of the Social Security Act under which Roderer applied specifically required the following:
 (1) Every child ... of an individual who dies a fully or currently insured individual, if such child--
 (A) has filed application for child's insurance benefits,
 (B) at the time such application was filed was unmarried and ... (ii) is under disability (as defined in section 423(d) of this title) which began before [s]he attained the age of 22, and
 (C) was dependent on such individual--
 * * *
 (ii) if such individual has died, at the time of such death,
 * * *
 shall be entitled to a child's insurance benefit...."
 42 U.S.C. Sec. 402(d).
 
 
 [2]
 This was the result of Dr. Thomas Vodde's test administered in 1982. The IQ of 79 is consistent with a 1946 Mayo Clinic test. This court has recognized that an IQ score is a lifelong condition, see Guzman v. Bowen, 801 F.2d 273, 275 (7th Cir.1986)
 
 
 [3]
 At the end of his decision, the ALJ made the following specific findings:
 "1. The initial determination of March 29, 1982 is hereby reopened.
 
 
 [2]
 The Claimant is the child of the wage earner
 
 
 [3]
 The Claimant was unmarried at the time the application was filed and is still unmarried
 
 
 [4]
 The Claimant was dependent on the wage earner
 
 
 [5]
 The Claimant attained age 22 on June 27, 1956
 
 
 [6]
 Prior to attaining age 22, the Claimant had the following medically determinable impairments: epilepsy, borderline intellectual functioning, and dependent personality
 
 
 [7]
 The Claimant's subjective complaints are not substantiated by the objective medical and clinical findings, as per discussed in the evaluation of the evidence
 
 
 [8]
 The Claimant does not have any impairment or combination of impairments which impose significant restrictions to her functional capacity on or prior to June 27, 1956, the date when she attained age 22
 
 
 [9]
 The Claimant was not under disability at any time prior to the date she attained age 22."
 
 
 [4]
 Dependent personality disorder was not widely recognized by the psychological community until at least 1970, according to Dr. Vodde
 
 
 [5]
 Dr. Vodde testified at the ALJ hearing that the Mayo Clinic has always had a reputation for being "very thorough" in examining its patients. If a problem was indicated, the ALJ concluded the problem would have been noted in the clinical history provided. The Mayo Clinic medical reports contain numerous observations not directly related to the medical condition of Roderer
 
 
 [6]
 The early stages of her myopic condition, which is the cause of the deterioration of her eyesight, were diagnosed at the Mayo Clinic in 1958, although the report stated that it was correctable with eyeglasses at that time
 
 
 [7]
 In her brief on appeal, Roderer attempts to articulate at least 17 different arguments for overturning the Secretary's decision. Many of these are repetitive, and have already been discussed in this opinion. Roderer's claims that the ALJ's conclusions were contrary to his statement of facts and that all of the previous reviewers of her application process have stated that there were "no medical records of any consequence" prior to the age of 22 are without merit based upon the facts of this case. Her arguments that the Social Security Appeals Council did not follow its own regulations in reviewing her application because it did not file a psychiatric review technique form ("PRTF"), and her challenge to the validity of the PRTF utilized by the ALJ were not raised before the district court in this case, and we refuse to decide them for the first time on appeal. See Reynolds v. Bowen, 844 F.2d 451, 453 (7th Cir.1988)