**William N. RAY, Plaintiff–Appellant,**

**v.**

**Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant–Appellee.**

No. 86–3044.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 17, 1987.

Decided March 29, 1988.

Alan Mills, James P. Chapman & Assoc., Ltd., Chicago, Ill., for plaintiff-appellant.

Donald McDougall, Asst. U.S. Atty., Hammond, Ind., for defendant-appellee.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and PELL, Senior Circuit Judge.

COFFEY, Circuit Judge.

William Ray appeals the district court's order granting summary judgment in favor of the Secretary of Health, Education and Welfare (Secretary) on Ray's suit pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Secretary's denial of disability benefits under the Social Security Act. Ray argues that the Secretary's decision denying him disability benefits was not supported by substantial evidence, that the evidence demonstrated that he was disabled under the pertinent regulations, and that any alleged lack of relevant medical evidence to support a finding of disability is a result of the Secretary's breach of his statutory duty to develop the record. Because the Appeals Council failed to comment on its assessment of certain material evidence presented, we reverse and remand this case to the Secretary for further proceedings consistent with this opinion.

## I. BACKGROUND AND PRIOR PROCEEDINGS

William Ray is a fifty-year old man with a fifth grade education. From 1955 until October 24, 1975, Mr. Ray was employed as a welder with American Bridge, a division of the United States Steel Company located in Gary, Indiana (American Bridge). In 1965, Mr. Ray's right leg was amputated below the knee as the result of a work-related injury. Mr. Ray received a prosthesis and returned to work for American Bridge, though he occasionally required medical attention to correct complications with his artificial leg.

On October 24, 1975, Mr. Ray suffered a dizzy spell and chest pains which caused him to pass out at work. He was immediately hospitalized and diagnosed by Dr. Buyer as suffering from alcoholic cardiomyopathy.[1] He never returned to work at American Bridge, but was retired as of the date of his hospitalization. Ray filed for disability insurance benefits on January 23, 1976 stating that he had been disabled since October 24, 1975 as a result of his amputated leg and a "heart condition." His application was denied initially and on reconsideration. Ray requested and received a hearing before an Administrative Law Judge (ALJ) on October 22, 1976. He was not represented by counsel at that hearing. On February 7, 1977, the ALJ denied Ray's application for disability benefits. The Appeals Council declined review. Ray then filed this action seeking review of the Secretary's decision on June 30, 1977. On October 14, 1983, over six years later, the district court denied cross motions for summary judgment and remanded the case to the Secretary.[2] In its order remanding the case to the Secretary, the district court noted that the administrative record was replete with references to Mr. Ray's alcoholism and that the ALJ had neither considered this factor in his decision denying benefits, nor had he developed the record concerning Ray's alcohol dependency. Because of this failure to develop the record, the district court ordered the Secretary: 1) to make a meaningful record regarding Ray's alcoholism, and 2) to allow Ray to rebut an adverse post-hearing medical report on which the ALJ had relied.

On remand, Ray's application was assigned to the same ALJ. Five days prior to a scheduled supplemental hearing in this matter, Ray's attorney made a motion for a

---

1. Cardiomyopathy: Congestive myocardial disease resulting in cardiac enlargement and low cardiac output occurring in chronic alcoholics. *Dorland's Illustrated Medical Dictionary,* 222 (26th ed. 1985).

2. Appellant's Brief states that this enormous delay in ruling on Ray's suit was not occasioned by either of the parties but was the result of a "serious backlog" of Social Security cases in the Northern District of Indiana.

continuance in order to secure additional medical evidence, to schedule Ray for a psychological evaluation and to issue a subpoena for Dr. Lanman, the physician on whose 1976 report the ALJ had previously relied. The ALJ denied these motions and held the supplemental hearing on May 29, 1985. At the hearing, Mr. Ray and his nephew testified at length about the history and effects of Ray's alcoholism during the relevant period.[3] The ALJ also admitted into evidence Mr. Ray's employment and medical records from American Bridge, as well as medical records pertaining to Mr. Ray's inpatient treatment for alcoholism in March and April of 1985. The ALJ held the record open for approximately seven more months in order to permit Ray's attorney to furnish additional documents. The ALJ then issued his recommended decision on January 13, 1986, in which he again denied Ray's claim for disability benefits.

The ALJ found that Ray had the following severe impairments: "severe status post amputation of the right leg below the knee, which has not prevented work activity; alcoholic cardiomyopathy with occasional arrhythmias; history of alcoholism without evidence of interference with work performance." The ALJ concluded that none of these impairments, when considered in isolation or in combination, met the listings in Appendix 1, Subpart P, Regulations No. 4, which would direct a finding that he was disabled. The ALJ further held that Ray's testimony regarding the effect of his alcoholism on his ability to perform his work assignments was not credible in light of his employment records, which were free of disciplinary action for any alcohol-related incident. Though the ALJ concluded that Mr. Ray could not perform his past relevant work as a welder, he concluded that he retained the capability to do light work. Considering this residual functional capacity, along with Mr. Ray's age, education and work experience, the ALJ concluded that the Medical–Vocational Guidelines[4] directed a finding that he was not disabled at any time on or before December 31, 1981, which was the last date that he qualified for disability benefits.

Ray filed exceptions to the ALJ's recommended decision with the Appeals Council and introduced in evidence four additional exhibits relating to the severity of his alcoholism during the relevant period. The Appeals Council adopted the findings and conclusions of the ALJ, though it made several significant modifications to the ALJ's decision. The Council noted first that because Mr. Ray's alcoholism is classified as a mental impairment under the regulations (*see* 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.09), the ALJ should have evaluated the effects of his alcoholism on his ability to work according to the special procedures set out in the regulations.[5] To correct the ALJ's omission, the Appeals Council itself completed the required "Psychiatric Review Technique Form" and appended it to its decision.[6]

---

**3.** Ray last met the earnings requirement for disability benefits on December 31, 1981.

**4.** Section 404.1569 of Regulations No. 4 and Rules 202.17 and 202.18, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4.

**5.** 20 C.F.R. Part 404.1520a provides that in evaluating the severity of mental impairments, a special procedure must be followed at each level of administrative review. That procedure involves the completion of a "Psychiatric Review Technique Form" at each level of review, in order to assist the Secretary in "realistically evaluat[ing] the ability of a mentally impaired individual to engage in substantial gainful activity in a competitive work place environment." 42 U.S.C.A. § 421 note on 1984 Amendment. It seems possible that Ray could have challenged the Secretary's decision for failure to follow this procedure at every level of administrative re-

view as is required by the regulations. However, Ray did not raise this argument in the district court or here, so we consider it waived.

**6.** This action by the Appeals Council appears somewhat unusual, in that the form asks the evaluator to assess some 8 possible categories of mental disorders and the resulting degree of limitation that those disorders impose on four significant areas of functioning. The fact that this 9 page psychiatric evaluation form was completed for the first time by two members of the Appellate Council, whom we assume from the record are not trained in the field of psychiatry and who have never met or interviewed Mr. Ray, is cause for concern. The regulation itself contemplates that, at least at the initial and reconsideration levels, the Psychiatric Review Technique Form will be completed by a *medical* consultant. 20 C.F.R.

The Appeals Council further noted that, in light of Mr. Ray's mental impairment, the ALJ's reliance solely on the Medical–Vocational Rules in determining whether he was disabled was misplaced. The Appeals Council recognized that where a claimant has a combination of impairments that are both exertional and non-exertional, the Medical–Vocational Rules should be used only in evaluating the individual's exertional limitations. Once this determination has been made, it serves as a framework from which to evaluate any further effect that a non-exertional impairment has on the person's remaining work capability. 20 C.F.R. Pt. 404, Subpart P, Appendix 2, § 200.00(e)(2).

The Appeals Council found that on the basis of his exertional limitations only, Ray had the residual functional capacity for light work, and under the pertinent Medical–Vocational Rules, was not disabled by virtue of those impairments alone. The Council further found that Ray's alcoholism (non-exertional limitations) "did not significantly diminish his residual functional capacity for light work." It concluded on this basis that Ray was not disabled on or before December 31, 1981.

On June 25, 1986, Ray renewed his motion for summary judgment in the district court. On September 22, 1986, the district court granted summary judgment in favor of the Secretary. Ray then filed a motion to vacate the judgment on September 25, 1986. That motion was denied on October 23, 1986 and Ray timely filed his Notice of Appeal.

## II. SUBSTANTIAL EVIDENCE

We are reviewing the Appeals Council's decision because it is the final decision of the Secretary.[7] *See Bauzo v. Bowen,* 803

F.2d 917, 921 (7th Cir.1986). Under the applicable standard of review, we must determine whether the Appeals Council's decision is supported by substantial evidence.[8] *Burnett v. Bowen,* 830 F.2d 731, 734 (7th Cir.1987). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " *Bauzo v. Bowen,* 803 F.2d 917, 923 (7th Cir.1986), quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), taking into account "whatever in the record fairly detracts from its weight." *Bauzo,* 803 F.2d at 923.

■ When analyzing a claim for disability benefits, the Social Security regulations prescribe a five-step sequential inquiry to be followed in determining whether a claimant is disabled. *Id.* at 920 n. 1. The following steps are addressed in order:

1) Is the claimant presently unemployed?

2) Is the claimant's impairment severe?

3) Does the impairment meet or exceed one of the list of specific impairments?

4) Is the claimant unable to perform his former occupation?

5) Is the claimant unable to perform any other work in the economy?

*Id.;* 20 C.F.R. Part 404.1520. Once a claimant establishes proof regarding steps one through four of the five-step inquiry, he has met his burden of proof.[9] The burden then shifts to the Secretary to prove that the claimant remains capable of performing other work in view of the vocational factors of age, education, and work experience. *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987).

Based upon the Appeals Council's findings in Ray's case, we are of the opinion that Ray satisfied his burden of proof.

§ 404.1520a(d)(1). Once again, since Ray fails to raise any argument dealing with this irregularity we consider it waived.

**7.** Thus, Ray's argument that the ALJ erred in applying the Medical–Vocational Guidelines in light of his non-exertional impairments is irrelevant, since the Appeals Council corrected this error in making its determination.

**8.** The substantial evidence standard applies to the district court's review of the Secretary's deci-

sion, as well as our review of the district court's decision. *Burnett,* 830 F.2d at 734.

**9.** A claimant's failure to meet step 3 (whether the impairment meets or exceeds a listed impairment), however, does not end the inquiry. *Bauzo,* 803 F.2d at 920 n. 1. If steps 1, 2 and 4 are met, a claimant has established a prima facie case.

The Council found that Ray 1) had not engaged in substantial gainful activity since the onset of his disability; 2) had the following severe impairments: "status post amputation of the right leg below the knee; chronic alcohol abuse; alcoholic cardiomyopathy with occasional arrhythmias"; [10] and 3) was unable to perform his past relevant work. The Appeals Council found, however, that Ray was able to perform other work in the economy. It concluded that Ray had the residual functional capacity for light work and that his alcoholism did not significantly diminish that capacity. Thus, the Secretary concluded that Ray was not disabled during the relevant period.

We must therefore determine whether the Secretary's finding that Ray's alcoholism did not significantly diminish his capacity for light work was supported by substantial evidence. We have repeatedly emphasized that the Secretary's decision must be based on consideration of *all* relevant evidence and the reasons for his conclusion must be stated in a manner sufficient to permit an informed review. *Burnett*, 830 F.2d at 734; *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir.1984). The Secretary may not select only that evidence that favors his ultimate conclusion, *Garfield*, 732 F.2d at 609; rather, he "must articulate at some minimum level his analysis of the evidence in cases in which considerable evidence is presented to counter the agency's position." *Burnett*, 830 F.2d at 735 (quoting *Orlando v. Heckler*, 776 F.2d at 213). Thus, we have held that:

The decision of the ALJ must be based on consideration of all relevant evidence, and the reasons for his conclusions must be stated 'in a manner sufficient to permit an informed review.' We hold that all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand should be considered and discussed by the ALJ. The decision should contain and should be based upon a fair and impartial presentation of the medical evidence submitted by the claimant or obtained from other sources.

*Garfield*, 732 F.2d at 610 (citations omitted).

In determining that Ray's alcoholism did not significantly diminish his residual functional capacity for light work, the Appeals Council considered the following evidence. First, it relied on medical reports from June 29, 1965 to February 28, 1985, which it said contained no indications that Ray had experienced or been treated for any severe physical or mental disorders as a result of chronic alcoholism. Though the reports mentioned an incident of hostile and erratic behavior toward his wife in December of 1970, the Appeals Council concluded that the basis for that behavior was not explained. It also disregarded a doctor's report that in February of 1973, Ray "had a very aromatic odor to his breath," citing a lack of elaboration on the examining physician's part. Second, the Appeals Council relied on the absence of evidence that Ray had sought or received treatment for alcoholism or alcoholic related diseases during the relevant period. The Council did refer to the discharge records from Ray's inpatient treatment for alcoholism in March of 1985, noting that laboratory studies from that period were essentially normal and that he had been discharged without any medications or restrictions on his daily living, with the exception of attending Alcoholics Anonymous. Third, the Appeals Council concluded that Ray's other non-exertional limitations, alcoholic myocardiopathy and delirium tremens, had been stabilized with medication. Finally, the Appeals Council considered Ray's mental impairment in light of his own reports of depression, but concluded that his symptoms did not meet the requirements cited in the listings at § 4.01.

■ As noted earlier, the Secretary is not required to evaluate every piece of evidence presented, but he must articulate his analysis of "considerable evidence [which] is presented to counter the agency's position," at least at a minimum level. *Burnett*, 830 F.2d at 735 (quoting *Orlan-*

___
10. The Council found that none of Ray's impairments met or exceeded the Listings.

*do,* 776 F.2d at 213). Ray's attorney submitted four exhibits to the Appeals Council, which the ALJ failed to consider in his decision. One of those exhibits was a letter from Glenn Libert, a Senior Therapist at the in-patient alcoholism rehabilitation program that Ray attended in March and April of 1985. In this letter, Libert described Ray's history of alcoholism and concluded that:

> Based on these facts and substantiated by the enclosed records, it is my professional opinion that Mr. Ray lost control of his drinking and his life in terms of his family, job, health, social abilities and experienced legal problems as a result of his drinking.
>
> It is a disease that has progressed since his first drink at age 20 culminating finally in treatment at age 48 after at least 20 years of serious life's [sic] consequences.
>
> I have been treating alcoholics for 28 years and the profile Mr. Ray presents is a classic case of progressive, chronic alcoholism.

Ray also submitted a letter from Frank Selzer, Program Coordinator of U.S. Steel's Employee Assistance Program, who stated that:

> Based on the personal interview and a testing instrument used to diagnose alcoholism, I determined that Mr. Ray is a chronic alcoholic. He has had a serious problem with alcohol since about 1972. He first started drinking on a regular basis, mostly weekends, at age 20. By age 39, he was drinking on a daily basis, beer and Canadian Mist. He reports

many symptoms of alcoholism, such as blackouts, loss of control, marital problems prior to divorce, problems on the job, severe shaking especially in the morning and frequent intoxications.

Finally, there was a letter from Dan McGinnis, Coordinator of U.S. Steel's Employee Assistance Program, which stated:

> At the time of the first interview Mr. Ray reported heavy drinking since at least 1972 and daily drinking since at least 1976. He also stated that by 1976 it was necessary to drink in order to stop morning shakes and that his drinking frequently led to intoxication. A screening device used routinely in diagnosis verified that Mr. Ray was afflicted with alcoholism. My predecessor, Mr. Frank Selzer, admitted Mr. Ray for treatment of alcoholism as soon as possible and he entered the care unit of Memorial Hospital, Michigan City, Indiana on March 14, 1985. There is no doubt that Mr. Ray was an alcoholic on March 12, 1985. The disease does not develop rapidly and it is reasonable to assume that Mr. Ray was drinking too heavily in 1972 and that, by 1976, he was, indeed, a daily drinker.

In its decision, the Appeals Council noted that the above letters had been entered into evidence. It further summarized the contents of the letters from McGinnis and Selzer in a single brief paragraph.[11] That, however, is the extent of the Appeals Council's discussion of this evidence regarding the severity of Ray's alcoholism during the relevant time period.[12] Whether the Appeals Council refused to comment on the reports of Ray's counselors because it was

---

**11.** The Appeals Council stated:

> A letter dated January 17, 1986, by Dan McGinnis, Coordinator, Employee Assistance Program, shows that when the claimant was seen at that office on March 12, 1985, and interviewed by another Program Coordinator, Frank Selzer, the claimant reported being a heavy drinker since at least 1972 and a daily drinker since at least 1976. After their evaluation it was concluded that the claimant was afflicted with alcoholism for many years prior to his arrival at their program and his ability to function normally in life was severely hampered by his alcohol abuse (Exhibits AC–3 and AC–4).

**12.** Similarly, the district court made only passing reference to the reports of Ray's counselors in its order granting summary judgment for the Secretary. This court became aware of the contents of those reports only through comments in the brief on appeal and through our own review of the voluminous record. Though we recognize that it is each reviewing court's duty to fully examine the record, "we should not encounter surprises of this magnitude when we do so." *Garfield,* 732 F.2d at 610. And though we do not decide the facts anew, reweigh the evidence or substitute our judgment for that of the Secretary, we are duty bound to "be more than an uncritical rubber stamp." *Id.*

unable to dismiss them in a perfunctory manner, or whether the Council simply was careless or negligent in failing to consider them, we do not know; but the fact remains that the evidence was not discussed within the parameters of the applicable law. Instead, the Council stated blankly, "the record is devoid of persuasive documentation that the claimant, on or before December 31, 1981, suffered from anatomical, physiological or psychological abnormalities, because of chronic alcoholism, that were of sufficient severity to preclude any substantial gainful activity for a continuous period of at least 12 months."

Further evidence that the Appeals Council failed to consider the reports of Ray's alcoholism counselors is revealed upon review of the Psychiatric Review Technique Form that the Council members filled out and attached to their decision. Under the portion of that form provided for analyzing "Affect Disorders," the Appeals Council checked none of the symptoms under depressive syndrome but instead merely checked "other"—citing "complaints of depression." Yet the letters from Ray's alcoholism counselors could have supported a finding of the presence of evidence at least with regard to "Anhedonia or pervasive loss of interest in almost all activities," "feelings of guilt or worthlessness" and hallucinations. Furthermore, when rating the severity of Ray's mental impairment in terms of several categories of functional limitation, the Appeals Council rated Ray's "difficulty in maintaining social functioning" as "slight," despite evidence from McGinnis that "Mr. Ray's ability to function normally in life was severely hampered by his alcohol abuse." Once more, the Appeals Council either refused or forgot to discuss or delineate its reasoning for failing to consider this evidence as it related to Ray's mental impairment, leaving this court with an undeveloped record that is insufficient for meaningful appellate review. *Burnett*, 830 F.2d at 736. Although the Appeals Council may have considered and rejected this evidence for sound reasons, its failure to provide even a "minimal level of articulation" regarding its assessment of this evidence requires us to remand this case.

Though the Appeals Council failed to provide us with its reason for not considering the evidence from Ray's alcoholism and employee assistance counselors, the Secretary argues on appeal that this evidence regarding the severity of Mr. Ray's alcoholism during the period from 1975 to 1981 is not relevant because it is based upon opinions formed several years after the period in question.[13] It has not been decided in this circuit, or any other, whether medical evidence regarding the severity of a claimant's alcoholism which postdates the covered period is relevant. Ray asserts that our decision in *Start v. Weinberger*, 497 F.2d 1092 (7th Cir.1974) is controlling on this issue. There we held that a diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment and that such diagnosis may establish the existence of an impairment during the covered period. *Id.* at 1097. Thus, we held that a physician's 1957 diagnosis that the claimant suffered from the progressive disease of scleroderma "since the late 1930's" was acceptable medical evidence to establish an impairment prior to 1951. *Id.*

The Secretary argues, on the other hand, that our decision in *Lieberman v. Califano*, 592 F.2d 986 (7th Cir.1979), should control our decision on this issue. In *Lieberman*, we held that the ALJ did not err in failing to afford conclusive weight to a tentative diagnosis, based upon a single psychiatric examination conducted some 40 years after the fact, that the claimant had

---

13. We are unable to determine with specificity from the record and thus are left to speculate that the Appeals Council may have considered this evidence irrelevant because it was not based on observations made during the period of coverage. In rejecting Ray's argument that the ALJ should have ordered a psychiatric examination of Ray, the Appeals Council stated,

"[t]he Council also agrees that in view of the time that has elapsed since the claimant was last insured, and an absence of psychiatric signs and symptoms on prior examinations, a psychological evaluation at this point in time would have questionable value for determining if the claimant was 'disabled' on or before December 31, 1981."

suffered from an unspecified disease some 40 years prior to the examination. *Id.* at 991. We distinguished *Lieberman* from our earlier decision in *Stark* for a number of reasons. First, we noted that whereas the claimant in *Stark* suffered from a precisely diagnosable impairment (scleroderma) with well-known developmental stages, Lieberman's vaguely and tentatively diagnosed depressive condition did not follow a pattern of readily definable and medically determinable developmental stages. We also noted that whereas Stark's physician had treated her for many years, the psychiatrist in *Lieberman* had conducted but a single examination more than 40 years after the relevant period. *Id.* at 992. Finally, we emphasized that the ALJ *did* consider the later medical evidence presented by Lieberman and had properly afforded that evidence significant, though not conclusive weight. *Id.* at 991. By contrast, the Appeals Council in this case either failed to or refused to afford Ray's medical evidence any weight at all.

Neither of the parties cited our decision in *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir.1984), which is also relevant to this issue. There, we held that the Secretary had erred in refusing to consider post–1965 medical records pertaining to the disabling effect of a claimant's epilepsy prior to 1965 and reversed the Secretary's denial of benefits on that basis. We are inclined to agree with Ray that the facts in the instant case are more analogous to those in *Stark* (and *Halvorsen*) than *Lieberman*. Most significantly, it appears that alcoholism, which is universally recognized as a progressive disease, is much more akin to the slowly developing disease at issue in *Stark* than it is to the vaguely defined or differentiated mental illness discussed in *Lieberman*. Furthermore, as Ray points out, the opinions of Ray's alcoholism counselors did not require the tremendous leap into the valley of conjecture and speculation some forty years in the past that *Lieberman* involved. Instead, their opinions were formed during the course of treating Ray for a disease with professionally recognizable developmental stages. At the very least, these reports were entitled to be given significant weight by the Secretary; they should not have been ignored, much less summarily dismissed.

Our recent decision in *Sears v. Bowen*, 840 F.2d 394 (7th Cir.1988) (per curiam), lends further support to our conclusion that the reports of Ray's alcoholism counselors were relevant and should have been considered by the Secretary. In *Sears*, we held that a psychiatric report detailing Sears' mental impairments as of October 1984 was material evidence within the meaning of 42 U.S.C. § 405(g),[14] despite the fact that the report did not purport to express an opinion as to the severity of Sears' psychiatric problems prior to October 1984, when he last qualified for disability benefits. *Sears*, at 400–01. We found the report to be material despite the timing problem, because, among other things, it suggested that Sears' psychiatric problems were of a long-standing nature. *Id.* at 401. We also rejected the district court's finding that the report of long-standing psychiatric problems was inconsistent with Sears' past history of gainful employment, stating:

> Many people with psychiatric problems have doubtless been able to maintain gainful employment for periods of time … It is not inconsistent, particularly when considering mental impairments, that a claimant might have periods of psychiatric episode, as well as periods of remission, yet still be classified as disabled under the governing regulations … As to his previous employment, Sears last gainful employment was in 1980; thus it is very possible that his psychiatric problems became disabling, if they did, some time after that.

*Id.* at 400–01.

In this case, the reports of Ray's alcoholism counselors, unlike the doctor's psychiatric report in *Sears*, *did* express opinions

---

**14.** Section 405(g) provides in part:

The court … may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is *material* and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. (emphasis added).

as to the disabling effects of Ray's alcoholism during the covered period. In light of those counselors' specialized experience in diagnosing and treating alcoholics, their reports regarding the progression of Ray's alcoholism were entitled to be given substantial weight. And, contrary to the suggestion of the Secretary and the district court, the fact that Ray successfully escaped detection as an alcoholic prior to October of 1975 (when he finally collapsed at work as a result of a heart condition brought on by chronic alcoholism) is not inconsistent with reports that over the years, Ray's alcoholism got progressively worse. On the contrary, this evidence is wholly consistent with the counselors' conclusions that by 1975 or 1976, Ray's disease had progressed to the stage where it very possibly could have become disabling.

Thus, we hold that the reports of Ray's counselors regarding the severity of his alcoholism from 1976 to 1981 are relevant and must be considered by the Secretary on remand. We decline to express any view on whether those reports, once legitimately considered, establish that Ray was disabled by his alcoholism within the meaning of the Social Security Act; that determination is left to the Secretary. Should the Secretary decide that this evidence is not determinative on the question of Ray's disability during the relevant time period, he is required to analyze and articulate his reasons for such a conclusion.

### III. DEVELOPMENT OF THE RECORD

■ Ray also argues that the Secretary breached his statutory duty to develop the record regarding Mr. Ray's alcoholism, pointing specifically to the ALJ's refusal to schedule a psychological examination for Ray. The Secretary argues, on the other hand, that "[w]hen an applicant for Social Security benefits is represented by counsel [the Secretary] is entitled to assume that the applicant is making his strongest case

for benefits." *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir.1987). The Secretary also argues that the decision of whether or not to schedule a psychological examination is wholly within his discretion.[15] In this instance, the Secretary apparently denied Ray's request for a psychological examination because he felt that it would not be relevant to establishing the severity of Ray's alcoholism during the covered period.

We are not convinced that a psychological examination of Ray, even at this late date, would not be relevant or helpful. Courts have held that under certain circumstances, a retrospective hearing on the competency of a defendant to stand trial may be held. This circuit has held that though retrospective competency hearings present obvious hazards, "the mere passage of time may not make the effort meaningless." *United States ex rel. Bilyew v. Franzen*, 686 F.2d 1238, 1247 (7th Cir.1982). Citing cases in which retrospective competency hearings were held some 2½, 7 and even 9 years after trial, we stated: "A reliable reconstruction of petitioner's mental status [as of the time of trial] depends less on time than on the state of the record. Especially where medical information substantially contemporaneous to trial is available, the chances for an accurate assessment increase." *Id.*, (quoting *Bruce v. Estelle*, 536 F.2d 1051, 1057 (5th Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977)). Other courts that have addressed this issue of whether a meaningful retrospective competency hearing can be held have also relied to some extent on the existence of contemporaneous medical evidence in the form of psychiatric examinations conducted near the time of trial. *See e.g. Wheat v. Thigpen*, 793 F.2d 621, 630 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987); *Martin v. Estelle*, 583 F.2d 1373, 1374 (5th Cir.1978); *Bruce*

---

**15.** We question the accuracy of this statement in light of the regulatory requirement regarding the evaluation of mental impairments. See footnote 5, *supra*. On remand, the Secretary may wish to consider whether the Appeals Council's *post facto* completion of the Psychiat-

ric Review Technique Form (see footnote 6, *supra*) reflects compliance with the letter and spirit of the regulations, or whether those regulations contemplate completion of the form by a *medical* consultant.

*v. Estelle, supra,* 536 F.2d at 1057. Although in some of these cases the courts did consider retrospective testimony regarding a defendant's competency at a time some years in the past, the existence of at least some contemporaneous evidence regarding the person's mental state at the time of trial seems to have been a prerequisite to a meaningful retrospective assessment.

In this instance, there is admittedly no contemporaneous psychological evidence of Ray's mental state during the covered period that would serve as a baseline for assuring the reliability of a retrospective psychological exam. As Ray points out in his brief, this absence of contemporaneous medical evidence is attributable to both the nature of his disease (alcoholics refuse to seek treatment because they refuse to admit they are alcoholics), and, more importantly, to the failure of the Secretary to adequately develop the record in the first place. At Ray's first hearing, the ALJ totally ignored the substantial evidence of Ray's alcoholism in ruling that he was not entitled to benefits. Ray's case then sat in limbo waiting for review in the Northern District of Indiana for six years. By the time it was remanded to the ALJ over six years later, he determined that a psychological examination would no longer be relevant.

We question whether Ray should pay the price for the Secretary's failure to have adduced contemporaneous medical-psychological evidence, especially when the Secretary is responsible for Ray's Catch-22 situation. In the context of retrospective competency hearings, a defendant's remedy for the trial court's failure to have ordered the necessary psychiatric testing (so that a meaningful retrospective hearing is not possible) may be the issuance of a writ of habeas corpus. *Bilyew,* 686 F.2d at 1247; *Wheat,* 793 F.2d at 630. This drastic remedy is compelled by the defendant's due process right to be tried only if he is competent to stand trial. *Id.* at 629-30. Though Ray has no analogous due process right to disability benefits, we believe that he is entitled to a fair hearing on this claim and, ultimately, justice. We therefore di-

rect the ALJ to order a psychological examination of Ray to determine whether he was disabled during the covered period. Whether or not the passage of time precludes a reliable retrospective assessment of Ray's mental condition during the covered period should be left to the examining physician, who will be in a better position to make that determination.

## IV. CONCLUSION

The decision of the district court is reversed and the case is remanded to the Secretary for further proceedings consistent with this opinion.