**Matt WILLIAMS, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 87 C 7361.**

United States District Court, N.D. Illinois, E.D.

June 15, 1988.

---

Mark H. Hellmann, Chicago, Ill., for plaintiff.

Gillum Ferguson, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Matt Williams applied for a Social Security period of disability, disability insurance benefits and supplemental security income on October 3, 1985 alleging a disability as of July 1, 1983 (later changed to September 21, 1985). The Social Security Administration denied the claim and Mr. Williams exhausted each of his administrative remedies in a timely fashion. On November 25, 1986 Administrative Law Judge Frederick Graf ("ALJ") of the Office of Hearings and Appeals, Social Security Administration, held a hearing. On January 29, 1987 the ALJ denied Mr. Williams' claim. The Appeals Council denied Mr. Williams' appeal of the ALJ's decision on June 18, 1987.

In this action, Mr. Williams seeks judicial review of the ALJ's decision under 42 U.S. C. § 405(g). The parties have filed cross motions for summary judgment.

## BACKGROUND FACTS

Mr. Williams was born in Mississippi on April 8, 1945 and was 42 years of age at the time of the hearing. He graduated from high school and attended one year of junior college, but claims he cannot read or write. He succeeded in high school and college through his athletic abilities. Mr. Williams' most recent employment was as a gas station leasor/operator from 1972 through 1983. From 1969 through 1972 he worked in and managed five Arco service stations. Before 1969 he did construction

work and worked with the Rock Island Railroad.

Mr. Williams last worked in his Arco station on July 1, 1983. On that date, he suffered injuries in an automobile accident. On September 21, 1985 he was evicted from the station.

Mr. Williams claims to have experienced severe pain since his automobile accident. According to his claims, the pain is focused on the left side of his head and his left arm, side, back and leg. He claims he has also experienced dizziness; headache; blurred vision; depression; nerves; disturbed sleep; stomach pains; difficulty walking, standing and sitting; and difficulty raising his left arm. He testified at his hearing before the ALJ that he cannot stand to be around people, that he gets nervous and upset, that he has no friends, can no longer pursue his athletic hobbies, has difficulty remembering, can only walk a couple of blocks at a time and stand for 20–30 minutes, and can only sit for 35–40 minutes. His typical day consists of watching TV and listening to the radio. He sometimes sleeps only three to four hours per night and dozes off at times during the day.

The medical evidence in the record includes hospital records from three hospitals which treated Mr. Williams from July 1, 1983 through July 10, 1983 after his automobile accident. Mr. Williams' treating physicians at each of these hospitals noted that Mr. Williams complained of pain in his head and neck. He was diagnosed with acute torticolis, received treatment, and was discharged in "improved" condition.

The evidence also includes the results of five psychiatric evaluations which Mr. Williams underwent between 1984 and 1986. In May, 1984 Mr. Williams exhibited "atypically psychotic" behavior, but was neither diagnosed nor hospitalized at that time. In February, 1986 Dr. Beebe determined that Mr. Williams suffered from an "adjustment disorder with mixed emotional features." (A.R. 209). In March, 1986 Dr. Zilinskas concluded that Mr. Williams was "atypically psychotic." (A.R. 233). In May, 1986 Dr. Bland determined that Mr. Williams had an "adjustment disorder with

a depressed mood." (A.R. 236). However, each of these psychiatrists concluded that Mr. Williams' psychiatric disorder did not significantly restrict his daily activities. (A.R. 211, 230 and 243).

Mr. Williams was last evaluated by a psychiatrist in October, 1986. At this evaluation, Drs. Miller and Ostrov noted that Mr. Williams showed feelings of persecution and suspiciousness, considerable anxiety, and excessive somatic concerns. Consequently, the doctors determined that Mr. Williams suffered from major, recurrent depression and a paranoid personality disorder which markedly restricted his daily activities and severely compromised his concentration. Dr. Ostrov noted in his report, however, that Mr. Williams failed to complete several of the diagnostic procedures because he had lost his glasses and had not replaced them.

Finally, the evidence includes Mr. Williams' patient records from his Anchor physician. These records disclose that Mr. Williams complained of pain, blurred vision and nervousness, but that consultative examinations revealed no abnormalities. The records also report that on several occasions between November, 1983 and June, 1986 Mr. Williams exhibited "bizarre" behavior, which prompted Anchor personnel to phone the police and send Mr. Williams to a psychiatric hospital on May 3, 1984. In addition, an Anchor physician noted in Mr. Williams' file that the Pain Treatment Center refused to treat Mr. Williams further because supervisors at the Center believed him to be a threat to the personnel.

The ALJ concluded from this record that Mr. Williams is not under a "disability" as that term is defined in the Social Security Act. The ALJ recognized that Mr. Williams has severe impairments consisting of torticolis and an emotional disorder, but that his impairments do not meet or equal the requirements of the Listing of Impairments. Further, the ALJ decided that Mr. Williams' impairments do not prevent him from performing past relevant work. The ALJ found that Mr. Williams has the residual functional capacity to perform all work-related activities except those involving lift-

ing very heavy objects over 100 pounds, but that Mr. Williams' past relevant work as a gas station leasor/operator did not require him to lift objects over 100 pounds. Finally, the ALJ concluded that Mr. Williams subjective complaint of debilitating and intractable pain was not credible.

## DISCUSSION

The Social Security Act provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In this case, the ALJ's findings stand as those of the Secretary, and must be upheld if supported by "substantial evidence on the record as a whole." *Walker v. Bowen,* 834 F.2d 635, 639 (7th Cir.1987); *Smith v. Schweiker,* 735 F.2d 267, 270 (7th Cir.1984). An administrative decision is supported by substantial evidence if there exists "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. Labor Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Graham Hospital Association v. Heckler,* 739 F.2d 285, 287 (7th Cir.1984).

When analyzing a claim for disability benefits, the Social Security regulations prescribe a five-step sequential inquiry to be followed in determining whether a claimant is disabled. *Ray v. Bowen,* 843 F.2d 998 (7th Cir.1988).

(1) Is the claimant presently unemployed?

(2) Is the claimant's impairment severe?

(3) Does the impairment meet or exceed one of the list of specific impairments?

(4) Is the claimant unable to perform his former occupation?

(5) Is the claimant unable to perform any other work in the economy?

*Ray,* at 1001; 20 C.F.R. § 404.1520. Once a claimant proves steps one through four of the five-step inquiry, he has met his burden of proof. The burden then shifts to the Secretary to prove that the claimant remains capable of performing other work in view of the vocational factors of age, education, and work experience. *Walker v. Bowen,* 834 F.2d at 640.

■ Mr. Williams first asserts that the ALJ erred in finding that he has the residual functional capacity to perform his past relevant work. In determining whether a claimant is unable to perform the duties of his former occupation, the ALJ is required to decide whether the claimant "retains the [residual functional capacity] to perform:

1. The actual functional demands in job duties of a particular past relevant job; *or*

2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy."

*Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir.1985), quoting Social Security Ruling 82–61. To make this determination, the ALJ must compare the physical demands of the claimant's past relevant work with his present mental and physical capacity. *Veal [v. Bowen],* 833 F.2d [693] at 697 [(7th Cir.1987)].

■ The ALJ incorrectly stated that Mr. Williams could perform all work-related activities except for work involving lifting very heavy objects over 100 pounds. The record discloses that Mr. Williams retained the maximum capacity to lift 50 pounds and to frequently lift or carry 25 pounds. (A.R. 111, 115, 221, 248).

However, the record amply supports the ALJ's conclusion that Mr. Williams had the residual functional capacity to perform the tasks of his previous job. Although Mr. Williams' claim that his previous work as a gas station leasor/operator involved lifting objects of 100 pounds or more and frequent lifting of 20–50 pounds (A.R. 89, 274), the Dictionary of Occupational Titles defines the occupation of "automobile service station attendant" and "automobile service station mechanic" as "medium" work. *Dictionary of Occupational Titles,* 4th Ed., p. 972; *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles,* pp. 386 and 453. "Medium work" requires lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

■ An ALJ can determine residual functional capacity either by considering the demands of the claimant's actual previous work or the demands of the occupation as it is required by employers throughout the national economy. *Veal v. Bowen,* 833 F.2d at 697. The ALJ need not compare a claimant's exertional limitations to the demands of his particular past relevant job. *Orlando v. Heckler,* 776 F.2d at 215. In this case, therefore, although Mr. Williams claimed that his work required heavier lifting than employers generally require of service station employees, substantial evidence supports the ALJ's conclusion that Mr. Williams could perform his previous work despite his impairments.

■ Mr. Williams next asserts that the ALJ improperly failed to credit his testimony concerning pain. Mr. Williams claimed at the hearing that he could not work because of intractable and debilitating pain located in his stomach, back and legs. In his findings, the ALJ found that the evidence indicated a physical impairment which might cause Mr. Williams some discomfort, but that the evidence did not "document by clinical findings that his impairments might be expected to produce the intractable and debilitating pain" which Mr. Williams described. (A.R. 18). Consequently, the ALJ concluded that Mr. Williams' testimony concerning intractable and debilitating pain was not credible.

An ALJ's determination concerning the credibility of witnesses is entitled to considerable weight. *Walker v. Bowen,* 834 F.2d 635, 641 (7th Cir.1987); *Cheshier v. Bowen,* 831 F.2d 687, 690 (7th Cir.1987). "Moreover, when the credibility of a witness' testimony concerning subjective complaints, such as pain, is the issue, the Social Security Act requires corroborating objective medical evidence to substantiate such symptoms." *Cheshier,* 831 F.2d at 690.

The ALJ's decision that the medical evidence does not support Mr. Williams' claims of debilitating pain is supported by

substantial evidence. Pain from the injuries he sustained in the traffic accident had subsided by the time he was discharged from the hospital in July, 1983. (A.R. 126). In May, 1984 Mr. Williams denied having any physical problems. (A.R. 188). In February, 1986 Mr. Williams complained of pain in his head (A.R. 209), but a concurrent medical examination evidenced no "significant impairment of the ability to perform fine and gross manipulations." (A.R. 215).

■ Finally, Mr. Williams asserts that the ALJ erred in finding that a severe mental impairment existed which failed to meet the durational requirement. Under the Social Security Regulations, unless an impairment is expected to result in death, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The ALJ found that prior to October, 1986 Mr. Williams did not suffer from a mental impairment which precluded him from performing his past relevant work.[1] However, the ALJ found that the evaluation performed in October, 1986 "may represent early signs of a severe mental impairment" but refused to find a disability on the basis of this evaluation because any mental impairment which this evaluation suggested "is of a recent onset and may not last for a continuous period of not less than 12 months if the claimant undergoes therapy." (A.R. 17).

The court questions the ALJ's treatment of Mr. Williams' most recent psychiatric evaluation. The ALJ's decision seems to suggest that he based his finding that Mr. Williams suffers from a severe mental impairment entirely on the evaluation completed by Drs. Miller and Ostrov. However, at another point in his decision, the ALJ appeared to discredit the evaluation. The ALJ stated that the results of this evaluation were "highly questionable ... when the record as a whole is considered." (A.R. 17). Specifically, the ALJ noted that

1. That Mr. Williams did not suffer from a mental impairment entitling him to disability benefits prior to October, 1986 is well supported by the record. Although Dr. Zelisko, Dr. Beebe, Dr. Zilinskas and Dr. Bland each diagnosed Mr. Williams as having a mild psychiatric disorder, each of these physicians concluded that Mr. Williams had no psychiatric work limitations.

Mr. Williams had not displayed such extreme psychological problems in any of his previous testing, and that Mr. Williams failed to complete several of the diagnostic testing procedures because he had lost his eyeglasses and had difficulty seeing the material. The ALJ concluded that Mr. Williams' "questionable attitude and somewhat inconsistent presentation of his abilities" discredited the "indefinite" results of the October, 1986 evaluation. (A.R. 18).

The inconsistencies in the ALJ's decision require this court to remand this case to the ALJ for clarification of the grounds on which the ALJ based his conclusion that Mr. Williams' severe mental impairment did not amount to a disability. If in fact the ALJ discredited the October, 1986 evaluation, then his finding that Mr. Williams suffered from a severe mental impairment is inconsistent with both his conclusion that the other psychiatric evidence did not reveal a severe mental impairment amounting to a disability and the Psychiatric Review Technique Form appended to the ALJ's decision.[2]

On the other hand, if the ALJ did not discredit the October, 1986 evaluation but rather based his finding of a severe mental impairment solely on this evidence, then his finding that the impairment did not meet the durational requirement was not supported by substantial evidence in the record. It is well established that an ALJ cannot make independent medical determinations. *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985); *McGee v. Bowen*, 647 F.Supp. 1238, 1247 (N.D.Ill.1986). In this case, the record is silent on the issue of the duration of Mr. Williams' emotional disorder. Neither Drs. Miller and Ostrov nor any other psychiatrist set forth an opinion as to how long Mr. Williams had suffered or would suffer from his mental impairment. Moreover, none of the psychiatrists who evaluated Mr. Williams prescribed therapy, or opined that therapy would improve Mr. Williams' condition. Thus, the ALJ's conclusion that a severe impairment did not meet the durational requirement was not supported by substantial evidence.

As a result of the lack of clarity in the ALJ's opinion, this case is remanded to the ALJ for further investigation into (1) the weight to be afforded to the psychiatric evaluation completed by Drs. Miller and Ostrov, and, ultimately, (2) whether Mr. Williams suffers from a severe mental impairment which meets the durational requirement.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED. The case is remanded for further consideration consistent with this opinion.

---

**2.** The ALJ may have incorrectly stated his finding that Mr. Williams has a severe mental impairment. The ALJ stated in the Psychiatric Review Technique Form appended to his decision that Mr. Williams had a severe mental impairment based upon category 12.03 ("Schizophrenic, Paranoid or other Psychotic Disorders") which was not expected to last 12 months. *See* 20 C.F.R., Subpt. P, App. 1, § 12.03. Section 12.03 precludes a finding of disability unless a claimant's condition meets the specifications in either subparts A and B or subpart C. The ALJ found that Mr. Williams' condition met the "A" criteria of Section 12.03, but failed to satisfy the "B" or "C" criteria. The ALJ therefore should have concluded that Mr. Williams' mental impairment was not severe.

However, in his summary of the legal standards governing disability determinations, the ALJ stated that due to the Seventh Circuit opinion in *Johnson v. Heckler*, 769 F.2d 1202, 1212 (7th Cir.1985), he would not determine explicitly whether Mr. Williams' impairment was severe in evaluating his disability. Thus, the ALJ appears to have assumed that Mr. Williams' disability was severe without considering the Section 12.03 factors.