7 F.3d 238
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles ERLANDSON, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary, Health and Human Services,
Defendant-Appellee.
 No. 91-3697.
 United States Court of Appeals, Seventh Circuit.
 Argued July 8, 1993.
Decided Sept. 29, 1993.
 
 Before CUDAHY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Charles Erlandson appeals from a decision of the district court upholding the denial by the Secretary of Health and Human Services (Secretary) of his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (the Act). Erlandson's application was initially denied, as was his request for reconsideration. Erlandson then requested a hearing before an Administrative Law Judge (ALJ), who found that Erlandson was not disabled within the meaning of the Act because he could not document that he had a medically determinable impairment during the insured period. The Appeals Council denied review, and the decision of the ALJ became the final decision of the Secretary. Erlandson then sought judicial review pursuant to 42 U.S.C. § 405(g). On cross-motions for summary judgment, the district court denied Erlandson's motion and granted the Secretary's motion. Erlandson filed a timely appeal. We affirm.
 
 I. BACKGROUND
 
 2
 Erlandson was fifty-three years old at the time of his hearing before ALJ James A. Horn, held on July 7, 1986. Erlandson had completed two and one-half years of college, and worked for ten years as an industrial light bulb salesman for Duratest, Inc. He had not worked since leaving Duratest, Inc. in 1978. Erlandson first applied for disability insurance benefits in 1978. Following a hearing before an administrative law judge, who found that his impairments were not disabling, Erlandson was denied benefits on September 24, 1979. He did not appeal that decision. Erlandson's insured status expired on December 31, 1983. At Erlandson's 1986 hearing, he testified that he had been found to be disabled for purposes of Supplemental Security Income (SSI) benefits, but that he was not receiving benefits because it had not yet been determined whether he was financially eligible. At oral argument, the Secretary confirmed that in December of 1985, Erlandson was found to be disabled by mental depression, and was awarded SSI benefits. The benefits were terminated in 1988, when Erlandson was awarded a veteran's pension.
 
 
 3
 At his 1986 hearing, Erlandson complained of longstanding weakness, fatigue, dizziness, visual problems and difficulty concentrating, and stated that these problems have made it impossible for him to work. He also testified that he has suffered from tinnitus, which he describes as a "screaming" in his ears, since late adolescence, and that he has a history of seizures which are reasonably well controlled by diet and Valium. He stated that he was treated in 1978 for hypoglycemia by Dr. Phillips, and that his treatment consisted of following a prescribed diet and taking vitamins. He claimed that he still suffers from hypoglycemia and must follow a diet consisting of frequent small meals. He also maintained that beginning before 1983, he has had no physical or mental endurance, has needed to rest at least seven hours during a typical day, and has suffered from periods of cold sweats, rapid heartbeat and difficulty breathing. He also testified that during a visit to the Mayo Clinic in 1973 he was advised to consult a psychiatrist, but that he has never sought psychiatric treatment.
 
 
 4
 The medical record submitted by Erlandson provides no contemporaneous documentation of his complaints from September 25, 1979, the day after his first application for disability insurance was denied, through December 31, 1983, when his insured status expired. A report submitted by Dr. Barton, dated January 11, 1986, states that he last examined Erlandson on January 25, 1983, and that although Erlandson reported suffering from a long history of episodic attacks of generalized weakness, medical tests had failed to reveal any specific disease. Dr. Barton indicated that he believed Erlandson to be suffering from some disease process, and that he did not consider Erlandson a malingerer or hypochondriac.
 
 
 5
 Dr. Bruce A. Guberman performed a physical examination of Erlandson in 1985 in connection with Erlandson's claim for benefits. Dr. Guberman found no significant physical abnormalities and noted that although Erlandson reported suffering from generalized weakness since he was a teenager, there was no physical evidence of muscle weakness or atrophy. Based on the physical examination and Erlandson's medical history, Dr. Guberman diagnosed tinnitus of unknown origin, a history of neuropsychiatric disorder and a history of seizure disorder.
 
 
 6
 A psychiatrist, Dr. Paul Hannah, and a psychologist, Paul M. Aleksic, also examined Erlandson. Dr. Hannah stated that although Erlandson was rational and coherent, he spoke constantly of his multiple medical problems. Dr. Hannah stated that Erlandson suffered from major depression and dependent personality disorder, that there was no documentation to support his claims of medical illness and that "it is obvious that he is denying his psychiatric problem." Dr. Aleksic performed a Mental Residual Functional Capacity Assessment, and determined that Erlandson was suffering from major depression with impairment of concentration and restriction of activities.
 
 
 7
 Dr. John C. Pottage, Jr. performed physical examinations of Erlandson on June 19, 1986 and July 21, 1986. Dr. Pottage stated that Erlandson's physical examination was essentially normal except for "moderately elevated antibody titers for the Epstein-Barr virus." Dr. Pottage was of the opinion that some of Erlandson's physical complaints could be attributed to viral neurasthenia, which may or may not be due to the Epstein-Barr virus. Dr. Pottage stated that viral neurasthenia or chronic Epstein-Barr virus (CEBV) can be severely disabling, making it impossible for the patient to work due to fatigue, and that there is no specific treatment for the disease. He also stated that without being able to test samples of Erlandson's blood from before 1983, it would be impossible to determine when he was infected. Dr. Pottage found that at the time of his examination, Erlandson was unable to work as a salesman because of severe fatigue.
 
 
 8
 Erlandson was represented by counsel at his hearing before Administrative Law Judge Horn. At that hearing, counsel stated that he had requested a copy of Erlandson's file documenting his 1978 claim for disability benefits but had been unable to obtain it. ALJ Horn obtained a copy of the 1979 decision denying benefits, and made it part of the record in this case. ALJ Horn found that by reason of administrative res judicata, Erlandson was not disabled through September 24, 1979.[1] He further found that from September 25, 1979 through December 31, 1983, the record failed to disclose a medically determinable impairment, and that the absence of any clinically observed signs or attempts by Erlandson to seek treatment during that time precluded a finding of disability. The ALJ thus denied Erlandson's application on February 24, 1987. The ALJ stated that the theory of his decision did not rest upon any determination concerning the credibility of Erlandson's testimony, and that for purposes of the decision he assumed that Erlandson had testified truthfully. The ALJ's denial of benefits was thus based on Erlandson's failure to prove that he had a medically determinable impairment as required under 42 U.S.C. § 423(d)(5) and 20 C.F.R. § 404.1508.
 
 
 9
 The Appeals Council denied review on July 7, 1987, noting that although the ALJ referred to 42 U.S.C. § 423(d)(5), which was no longer in effect at the time of his decision,[2] the underlying policy of the decision remained the same. Moreover, the Appeals Council concluded that the requirement of a sound medical basis for a finding of physical or mental impairment, codified at 20 C.F.R. §§ 404.1508, 404.1528, and 404.1529, was properly applied. The Appeals Council also determined that the 1978-79 record of Erlandson's first disability insurance application was not relevant to his current claim.
 
 
 10
 Erlandson then sought judicial review of the Secretary's final decision. The district court denied Erlandson's motion for summary judgment and affirmed the decision of the Secretary, stating that the ALJ was correct in concluding that the absence of medical evidence of impairment for the relevant period cannot be cured by a possible diagnosis provided nearly three years later. This appeal followed.
 
 II. ANALYSIS
 
 11
 The standard of review in disability cases requires the decision of the Secretary to be affirmed if it is legally sound and supported by substantial evidence. Ehrhart v. Secretary, 969 F.2d 534, 538 (7th Cir.1992); Scivally v. Sullivan, 966 F.2d 1070, 1075 (7th Cir.1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Scivally, 966 F.2d at 1075 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted)). Under this standard, a reviewing court may not "decide facts anew, reweigh the evidence, or substitute [its] own judgment for that of the Secretary." Id. (internal quotations, citations omitted).
 
 
 12
 In order for a claimant to qualify for disability insurance benefit payments, 42 U.S.C. § 423(a)(1)(D) requires that the claimant be disabled as defined by § 423(d). This statute provides in part:
 
 
 13
 (1) The term "disability" means--
 
 
 14
 (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;
 
 
 15
 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is defined as one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Moreover, Social Security Administration regulations provide that "[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms," 20 C.F.R. § 404.1508, and that the medical impairment must be such as "could reasonably be expected to produce the ... symptoms alleged." 20 C.F.R. § 404.1529(b). The claimant bears the burden of bringing forward medical evidence to establish the existence of an impairment. Bowen v. Yuckert, 482 U.S. 137, 146-47 n. 5 (1987); see 20 C.F.R. § 404.1512. Once the existence of an objective impairment is established, however, the Secretary may not reject the claimant's statements concerning the intensity or persistence of his symptoms or about the effect his symptoms have on his ability to work "solely because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. § 404.1529(c)(2); see Pope v. Shalala, No. 92-1084, slip op. at 13-20 (7th Cir. July 2, 1993) (adjudicator may not reject claimant's subjective complaints concerning the severity of her symptoms only because the available medical evidence does not fully corroborate the severity alleged); see also Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991) (en banc ) (same).
 
 
 16
 To demonstrate a physical or mental impairment, a claimant is not required to bring forward evidence of the cause of his disability or to provide a specific diagnosis. See Sparks v. Bowen, 807 F.2d 616, 617 (7th Cir.1986). The claimant is only required to show that he has an objectively verifiable medical abnormality that could reasonably be expected to bring about his symptoms. See id. at 617-18; see also Cohen v. Secretary, 964 F.2d 524, 529 (6th Cir.1992); Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir.1992). This requirement is not designed to punish claimants for shortfalls in medical knowledge, but to "screen out claims by hypochondriacs and goldbricks." Sparks, 807 F.2d at 618; see also Cohen, 964 F.2d at 529.
 
 
 17
 This case is made problematic because of the subsequent diagnosis of Epstein-Barr virus--an ailment presumably consistent with the earlier reported symptoms. Thus, Erlandson's principal argument on appeal is that the ALJ erred as a matter of law in requiring an exact contemporaneous diagnosis of the cause of Erlandson's symptoms. He contends that the nature of his medical ailment became apparent only after certain advances were made in detecting viral neurasthenia or chronic Epstein-Barr virus. The ALJ did not, however, require a specific diagnosis as a prerequisite to establishing disability for the period between September 25, 1979 through December 31, 1983. The ALJ explicitly stated that no such diagnosis was necessary, and based his decision on the absence of any medical evidence from that period, noting that there was no documentation that Erlandson even sought medical treatment for his complaints during that time. The only evidence Erlandson provided of medical examinations within the insured period was the report of Dr. Barton, dated November 11, 1986, which refers to medical tests performed in 1983 that failed to reveal any abnormalities. The ALJ thus acted within his discretion in finding that no objective impairment was established by Erlandson's contemporaneous medical record. See Sparks, 807 F.2d at 618.
 
 
 18
 Where a claimant has a long-standing medical problem, evidence concerning his condition during the post-insured period is relevant to determining whether the claimant was disabled within the insured period, and this evidence should be considered. Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir.1991); Ray v. Bowen, 843 F.2d 998, 1005 (7th Cir.1988). One way a claimant may establish a disability within the insured period is by bringing forward evidence of a progressive disease which follows "a pattern of readily definable and medically determinable developmental stages." Ray, 843 F.2d at 1005. In this case, however, the report of Dr. Pottage, which was based on his 1986 examinations of Erlandson, failed to establish the existence of any disease which might follow a pattern of medically determinable stages, or to express an opinion concerning the presence of CEBV or of any other medical impairment during the insured period. Cf. id. at 1005-06. Dr. Pottage stated that he could not determine whether Erlandson became infected with the Epstein-Barr virus before 1983. Further, based upon his examination of Erlandson, Dr. Pottage was unable to state unequivocally that Erlandson's complaints during the period between 1979 and 1983 resulted from CEBV or from any other medically ascertainable condition, whether physical or mental. Under these circumstances, the ALJ was entitled to conclude from the absence of contemporaneous medical reports that Erlandson had failed to prove he had a medically determinable impairment. See Anderson, 925 F.2d at 222. Moreover, once this conclusion was properly drawn, the ALJ was not required to consider Erlandson's testimony concerning the severity of his subjective symptoms, since that testimony by itself could not support a finding of disability. See 42 U.S.C. § 423(d)(1)-(3); 20 C.F.R. §§ 404.1508, 404.1528(a), 404.1529(a)-(b); Pope, slip op. at 13-14 (evaluation of subjective claim of severity of symptoms is a two-step inquiry, which must begin with some objective medical evidence of an impairment); see also Marolf, 981 F.2d at 977-78; Bunnell, 947 F.2d at 345.
 
 
 19
 Finally, Erlandson contends that the ALJ erred in not reviewing the medical evidence contained in the file developed at the time of Erlandson's 1978 application for disability benefits, which ended in denial. In that case, the administrative law judge found that Erlandson suffered from depression, which was not disabling. Further, two doctors who examined Erlandson at the time concluded that he could benefit from psychiatric care. These findings tend to undermine Erlandson's contention that the medical record in the earlier proceeding could aid in establishing a disabling impairment.
 
 
 20
 Certain medical records predating Erlandson's current application for benefits were obtained and made part of the record in this proceeding. These records show that Erlandson underwent tests at Northwest Hospital in Chicago, Illinois on at least two occasions. According to the reported findings, Erlandson had normal electroencephalograms in 1974 and 1977. Moreover, tests of major organs taken in late 1977 showed no abnormalities, and Erlandson's hypoglycemia was improving with treatment. The available medical records from the earlier period thus provide no reason to believe that the medical file developed in 1978-79 contains any evidence that may aid in filling the four-year gap in the contemporaneous medical record.
 
 CONCLUSION
 
 21
 Erlandson's contention that no medical test capable of detecting CEBV existed before 1983 does not excuse him from the statutory requirement of producing some objective medical evidence that he suffered from an impairment between 1979 and 1983, when his insured status expired. Erlandson was unable to document that he actively sought medical diagnosis or treatment during the insured period, or to show that subsequent medical examinations established that he had an impairment during that period. Because the ALJ's conclusion that Erlandson failed to meet his burden of proof is thus supported by substantial evidence, we affirm the district court.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Consequently, as both parties agree, Erlandson is not eligible for benefits before September 25, 1979. See, e.g., Micus v. Bowen, 979 F.2d 602, 603 (7th Cir.1992); 20 C.F.R. § 404.957(c)(1)
 
 
 [2]
 Section 223(d)(5) of the Act, as amended in 1984 and codified at 42 U.S.C. § 423(d)(5), had a sunset provision ending its effectiveness on January 1, 1987. See Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, § 3(a)(3), 1984 U.S.Code Cong. & Admin.News, (98 Stat.) 1799. Although this statute was no longer applicable on February 24, 1987 when the ALJ reached his decision, the legal basis of his decision was supported by applicable federal regulations. See 20 C.F.R. §§ 404.1508, 404.1527-404.1529; see also Bunnell v. Sullivan, 947 F.2d 341 (9th Cir.1991) (en banc ) (discussing legislative history of statute and agency regulations)